RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___9_ / _27_ / _11____
      *90B*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


PAUL ROBERTS, JR.,                    CIVIL ACTION
          Petitioner                  SECTION "P"
                                      1:10-CV-00995
VERSUS

N. BURL CAIN, WARDEN,                 JUDGE JAMES T. TRIMBLE
          Respondent                  MAGISTRATE JUDGE JAMES D. KIRK


                REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

     Before the court is a petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by petitioner Paul Roberts, Jr.

("Roberts") on June 7, 2010.  Roberts is contesting his November

2005 conviction, by a jury in the Louisiana Ninth Judicial District

Court in Rapides Parish, on one count of second degree murder, one

count of attempted second degree murder, one count of possession

with intent to distribute marijuana, and one count of felon in

possession of a firearm.  Roberts was sentenced to life

imprisonment.  Roberts raises the following grounds for relief in

his habeas petition:

     1. Roberts was forced to wear shackles in front of the
     jury.

     2. Roberts' challenges for cause were erroneously denied.

     3. The State's prosecutor erroneously informed the jury
     that Roberts' co-defendant (Bell) had already been
     convicted of the same crimes in a separate trial.

4. Batson violations.

5. The State withheld evidence of the deal Roberts' co-defendant (Bell) received for his testimony.

6. Roberts' convictions for second-degree murder, attempted second-degree murder, possession of marijuana with intent to distribute, and felon in possession of a firearm violate the double jeopardy clause under the same evidence test.

7. Roberts' Sixth Amendment right to a fair trial was prejudiced when the trial judge failed to give the jury any instructions to not discuss the case with anyone or among themselves, and not to read or watch media accounts of the trial when it retired during recess and breaks during trial, and defense counsel was ineffective for failing to object.

8. Prosecutorial misconduct occurred when the prosecutor improperly vouched for the credibility of the State witness, Jose Reyna, during closing argument.

9. The trial judge violated Roberts' right to a fair trial and due process by making erroneous and misleading comments on the responsive verdict.

10. Roberts was denied the effective assistance of counsel when his trial counsel failed to request a cautionary instruction regarding the co-defendant's (Bell's) guilt.

Roberts claims exhaustion of his state court remedies and the Respondent does not dispute that contention. Roberts' habeas petition is now before the court for disposition.

<u>Rule 8(a) Resolution</u>

This court is able to resolve the merits of this <u>habeas corpus</u> petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the

2

required and adequate factual basis necessary to the resolution of the habeas corpus petition.  Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2).  Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S.

885, 122 S.Ct. 194 (2001), and cases cited therein.

Facts

The facts of this case as set forth by the Louisiana Third
Circuit Court of Appeal, at State v. Roberts, 06-765 (La.App.3d
Cir. 1/17/07), 947 So.2d 208, writ den., 2007-K-0362 (La. 10/5/07),
964 So.2d 938, are as follows:

> "Defendant was convicted of second degree murder for the
> killing of Christopher Cook and the attempted second
> degree murder of Jose Reyna, Jr., as well as the other
> crimes mentioned above.  These events occurred at Cook's
> apartment in Alexandria, Louisiana, on April 23, 2003,
> during a drug transaction.
>
> "Reyna, Jr. and Cook met at a halfway house in Rapides
> Parish where Reyna was serving time for possession of
> marijuana and distribution of drugs.FN1  After leaving
> the halfway house, Reyna returned to Texas. However, he
> and Cook had decided to deal marijuana together. The plan
> was that Cook would sell the marijuana in central
> Louisiana, then pay Reyna for the delivery.  On April 23,
> 2003, Reyna went to Alexandria to pick up a truck and a
> portion of the money Cook owed him for the most recent
> delivery.
>
>> "FN1. At the time of trial, Reyna was serving
>> sentences for money laundering and possession of
>> marijuana with intent to distribute. He had
>> received a sentence of seven years on each count to
>> run concurrently.
>
> "Reyna testified that when he arrived at Cook's apartment
> there were two other men there.  Cook was conducting a
> drug transaction with the two men.  Cook left the room
> and returned with an ice chest containing four pounds of
> marijuana.  During the transaction, Reyna and Cook were
> seated on a sofa on the left side of the room and the
> other two men on a sofa on the right side of the room.
> Reyna testified that 'the big fellow,' Kenny Bell,
> weighed the marijuana and the other man, Defendant,
> pulled out a gun. Defendant then said, 'be cool, we just
> gonna take this and nothing's gonna happen.' Reyna
> further testified that Bell opened the door to the

4

apartment, and said, 'blast 'em.'  Defendant and Bell left, taking the marijuana with them.

"According to the record, Defendant shot Cook and Reyna as he was running out of the apartment. Reyna was taken to a local hospital, where he remained hospitalized for two weeks.  Cook died as a result of a gunshot wound to the neck and was pronounced dead at the scene.  An autopsy revealed that a bullet entered Cook's left neck, lacerated the left jugular vein and the top portion of the left lung, and exited out his back."

## Law and Analysis

### The Law as to Ineffective Assistance of Counsel

Roberts raises several ineffective assistance of counsel claims which are discussed with the related claims below.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.  The court does not assess any alleged error in isolation.  In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established

federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence.  Jones v. Cain, 227 F.3d 228 (5th Cir. Oct. 2000), and cases cited therein.  See also, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Ground 1 - Restraints

First, Roberts argues he was forced to wear a restraint in front of the jury.  Roberts filed a motion to not be restrained during his jury trial (Doc. 15, Ex. 1, p. 96/100) which the trial judge denied (Doc. 15, Ex. 1, p. 2/100).  Roberts alleges that restraints are routinely used in court on criminal defendants in the Louisiana Ninth Judicial District Court.

In Deck v. Missouri, 544 U.S. 622, 629, 125 S.Ct. 2007 (2005), the Supreme Court held, in May 2005, that the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial.  Visible shackling of a criminal defendant during trial undermines the presumption of innocence and the related fairness of the fact-finding process, can interfere with a defendant's ability to participate in his own defense, such as by freely choosing whether to take the witness stand on his own behalf, and affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold.  Deck, 544 U.S. at

630-31, citing <u>Illinois v. Allen</u>, 397 U.S. 337, 344, 90 S.Ct. 1057 (1970). The shackles must be visible to the jury for a due process concern to arise. <u>Deck</u>, 544 U.S. at 634, 125 S.Ct. at 2015. The Fifth Circuit has held that shackling is an inherently prejudicial practice, permitted only when justified by an essential state interest specific to each trial. <u>United States v. Joseph</u>, 333 F.3d 587, 590-91 (5th Cir. 2003). Also, <u>State v. Sparks</u>, 1988-KA-0017, 2011 wl 1759847 (La. 5/11/11), __ So. 3d__. <u>United States v. Hope</u>, 102 F.3d 114, 117 (5th Cir. 1996).

A trial judge may require a defendant to wear restraints if the judge deems it necessary to protect the court and the courtroom. <u>Deck</u>, 544 U.S. at 632. The trial judge must take into account the circumstances of the particular case, <u>Deck</u>, 544 U.S. at 632, and the State must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained, <u>Hatten v. Quarterman</u>, 570 F.3d 595, 604 (5th Cir. 2009), cert. den., 130 S.Ct. 1283 (U.S. 1/25/2010). However, on collateral review of a state conviction, a federal court will grant habeas relief only when the use of restraints had a substantial and injurious effect or influence in determining the jury's verdict. <u>Tamez v. Thaler</u>, 344 Fed.Appx. 897, 899 (5th Cir. 2009), cert. den., 130 S.Ct. 1523 (U.S. 2/22/2010), citing <u>Hatten</u>, 570 F.3d at 604.

Roberts was tried in November 2005. Roberts' attorney filed a pretrial motion to wear civilian clothes and be free of

restraints at trial.  At the November hearing on the motion (Doc. 21, Ex. 1, p. 20/40), the trial judge stated that defendants are allowed to be in court without restraints as long as his bailiffs are comfortable with that because they are in charge of courtroom security.  When the trial judge asked the bailiff if he had an objection to Roberts being unrestrained in the courtroom during trial, the bailiff stated he objected to Roberts entering the courtroom totally unrestrained (Doc. 21, Ex. 1, p. 18/40), but told the trial judge he had "the last call" on the issue (Doc. 21, Ex. 1, p. 22/40).  The bailiff stated that he knew Roberts quite well, and that the restraint (called a "stiff leg") is designed not to restrict a person from walking or sitting, but to lock up when a person tries to run, and that it is otherwise not uncomfortable to wear (Doc. 21, Ex. 1, p. 18/40).  The bailiff also stated they had "never tried anyone that was incarcerated at the time, now, in a criminal case that was not restrained in some way" (Doc. 21, Ex. 1, p. 22/40).  The bailiff further stated that Roberts' co-defendant, Kenneth Bell, had not been restrained during his trial because they did not have any restraints large enough for Bell, so they had stationed additional bailiffs around the courtroom for security, instead (Doc. 21, Ex. 1, p. 23/40).  The trial judge explained that he was "very sensitive" to how the bailiffs were stationed in the courtroom in order to avoid the appearance of having increased security (Doc. 21, Ex. 1, p. 19/40).

Defense counsel stated that he was not concerned with Roberts' comfort, but instead with the appearance of innocence before the jury, and the fact that the "stiff leg" device clicks, pops, and cracks, and is visible where it extends past the bottom of the pants' legs and "projects to the jury that this man is restrained and is in jail" (Doc. 21, Ex. 1, p. 21/40).   Defense counsel further argued that, since bond had been set for Roberts, although he had been unable to post bond before trial, there was no need to restrain him during trial (Doc. 21, Ex. 1, p. 22/40).   Defense counsel pointed out that it would not make sense to allow him to go free before trial, then place him in restraints during trial (Doc. 21, Ex. 1, p. 22/40).

The trial judge stated that, if "something happened," it would be "his fault" (Doc. 21, Ex. 1, p. 22/40), but decided to speak further with his bailiff about courtroom security before he made a decision (Doc. 21, Ex. 1, p. 23/40); apparently that conversation took place off the record.   The first day of trial, the judge denied Roberts' motion to be free of restraints without further explanation (Doc. 21, Ex. 1, p. 22/40; Doc. 18, Ex. 1, p. 7/106), stating the leg restraints would be used underneath Roberts' clothes (Doc. 18, Ex. 1, p. 7/106).

The trial judge failed to give compelling reasons, or any reasons at all, on the record for shackling Roberts during his trial, as required by the United States Supreme Court in Deck v.

_Missouri_ (decided six months before Roberts' trial), and thus abused his discretion, particularly in light of the fact that bond was set for Roberts to be free prior to trial.  Roberts argues there were no compelling reasons justifying the use of restraints before the jury, and points out that he did not attempt to escape or cause problems for his jailers.  Roberts contends it is standard practice in the Louisiana Ninth Judicial District Court to restrain all incarcerated defendants by use of a restraint worn under the clothing which girdles the defendant's waist and extends down his leg, acting as a movement inhibitor.  The bailiff's statement that _every_ incarcerated criminal defendant is restrained during trial supports Roberts' allegation as to the prevailing practice in the Louisiana Ninth Judicial District Court, which has been prohibited by the Supreme Court.  Therefore, this court must determine whether the use of the restraints on Roberts during his trial had a substantial and injurious effect or influence in determining the jury's verdict.

Roberts did not testify, so he did not take the stand in front of the jury while shackled (Doc. 15, Ex. 1, pp. 11/100-12/100). While Roberts acknowledges that the "stiff leg" restraint device used is more discreet than shackles and chains, he argues it is visible and is audible when the defendant moves his leg or changes position.

The State argues that the overwhelming weight of the evidence

against Roberts demonstrates that the use of the restraint did not contribute to the jury's guilty verdicts.  Most incriminating was the eyewitness testimony of the surviving victim, Reyna, and the eyewitness testimony of Roberts' co-defendant, Bell, as well as the forensic evidence that supported their testimony.  Both Reyna and Bell testified that Roberts shot Cook and Reyna during a drug deal (for marijuana), killing Cook and wounding Reyna; Bell did not testify voluntarily against Roberts.

Given the great weight of the eyewitness testimony and the supporting forensic evidence against Roberts, the fact that Roberts was forced to wear a restraint in front of the jury did not have a substantial and injurious effect or influence in determining the jury's guilty verdicts in this particular case.  Compare, <u>Hatten</u>, 570 F.3d at 604.  Therefore, Roberts cannot show prejudice arising from the fact that he was restrained in front of the jury.

This ground for relief is meritless.

<u>Ground 2 - Challenges for Cause</u>

Roberts contends he was denied the right to a fair trial when the trial judge erred in denying challenges for cause for David Vanderhoeven, Suellyn Hudson, Nicole Dossey, and Geraldine Pringle. Roberts contends the denial of his challenges for cause required him to exhaust his peremptory challenges prematurely.

One touchstone of a fair trial is an impartial trier of fact, a jury capable and willing to decide the case solely on the

11

evidence before it.  Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.  McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849 (1984).

Peremptory challenges are not constitutional rights.  The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.  Herman v. Johnson, 98 F.3d 171, 174 (5th Cir. 1996), cert. den., 520 U.S. 1123, 117 S.Ct. 1262 (1997).  Thus, any claim that the jury was not impartial must focus not on the suspect juror, but on the jurors who ultimately sat.  Ross v. Oklahoma, 487 U.S. 81, 86, 108 S.Ct. 2273 (1988).  The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury.  Ross, 487 U.S. at 88, 108 S.Ct. 2273.

Roberts only complains that he had to exercise peremptory challenges for potential jurors David Vanderhoeven, Nicole Dossey, Suellyn Hudson and Geraldine Pringle.  Although he contends he was forced to use all of his peremptory challenges, Roberts has not alleged that any specific juror who sat for his trial was biased. Further, Roberts may not rest his constitutional claims on the loss of peremptory challenges resulting from the trial judge's denial of

his challenges for cause, since there is no constitutional right to a challenge for cause.   Therefore, Roberts has not shown he was denied his right to a fair trial by an unbiased jury.

This ground for relief is meritless.

Grounds 3, 5, 10 - Co-Defendant's Conviction

Next, Roberts argues the State's prosecutor erroneously informed the jury that Roberts' co-defendant had already been convicted of the same crimes in another trial.   Apparently, this occurred during opening argument and Roberts' attorney failed to object.[1]   Roberts further contends he was denied the effective assistance of counsel when his trial counsel failed to request a cautionary instruction regarding his co-defendant's (Bell's) guilt. Finally, Roberts contends the State withheld evidence of the deal Roberts' co-defendant received for his testimony.

In his opening statement, the State's prosecutor said,

> "You'll get to meet a man by the name of Kenneth Bell. Big as a mountain.  Big man.  You'll know that Kenneth Bell knows what went on the night of April 23[rd], two thousand and three.  Why?  Because Kenneth Bell was also in apartment number 211 with Christopher Cook and Jose Reyna.   You'll know that Kenneth Bell is a criminal. You'll know that Kenneth Bell has been convicted of murder in this case.  That a jury just like you found him guilty of murdering Christopher Cook in this case.   That he's awaiting his sentencing to a life in prison.  He's not gonna wanta be here.  You'll find that the Judge will have to order him to testify, through a grant of immunity.  That is, he's been convicted, jury's heard it,

---

[1] The State courts denied Roberts' claim of ineffective assistance of counsel, finding he was not entitled to errorless counsel (Doc. 15, Ex. 5, pp. 40/100, 46/100, 48/100).

that in order to compel him to testify in this case, what he says in this courtroom cannot be held against him. Now, he's already been convicted, but that's the only way he can be ordered to testify in this case.  And why would we do that: He's not gettin' immunity for the murder, he's already been convicted of the murder.   He gets immunity from any further involvement, I guess; he doesn't get immunity from perjury.  You'll come to know that.  Why?  Because he was there.  And who do you have to call to figure out what happened at a crime scene? Criminals.  He's not gonna like me, I'm the prosecutor that convicted him of murder.  So that, that might be one of the surprises in the trial that I can't anticipate. I don't get to talk to 'im.  You'll know that I would want to just like Jose Reyna.  I guess I could talk to him, and I did you'll know at one point, ah probably a year and a half ago, about, you know getting ready for, for a trial.  But don't want us to have, you know, don't wanta deal with 'im.  Don't wanta be in the same room with 'im, but I will have to because he was there and I gotta put 'im as a witness.  Kenneth Bell's not gonna wanta be here, he's not gonna wanta talk to me, but the Judge will order it."  (Doc. 15, Ex. 7, p. 54/100).

Roberts admits he did not object to the opening statement because he knew Bell would be called to testify and he planned to attack his credibility by asking him about his "deal" with the State.  Roberts contends he only asked for a mistrial, based on the prosecutor's opening remarks about Bell's conviction, because Bell lied about not having a deal with the State.

There is no need to advise the jury or its prospective members that someone not in court, not on trial, and not to be tried, has pleaded guilty.  The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious.  U.S. v. Hansen, 544 F.2d 778, 780 (5th Cir. 1977)(codefendant pleaded guilty before the trial commenced).

It is well-settled that a codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt.  U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir.), cert. den., 129 S.Ct. 247, 403 (U.S. 2008).

However, if the codefendant testifies, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness. U.S. v. Baez, 703 F.2d 453, 455 (10th Cir. 1983).  Also, Ramos-Cardenas, 524 F.3d at 610, citing Baez, 703 F.2d at 455.

In the case at bar, the State intended to call and did call Kenneth Bell to testify.  During direct examination by the State, Bell explained to the jury that he was being forced by the prosecutor to testify against Roberts and that he did not have a deal with the State (Doc. 15, Ex. 10, pp. 7/100-8/100).  Roberts contends Bell lied when he said he did not have a deal with the State.  However, Bell testified that he had already been convicted by a jury of second degree murder and attempted second degree murder (Doc. 15, Ex. 10, p. 27/100), and that a charge for possession of marijuana had also been filed against him but had not yet been prosecuted with the murder charges (Doc. 15, Ex. 10, p. 28/100).  Bell testified that he subsequently pleaded guilty to attempted possession of marijuana (Doc. 15, Ex. 10, p. 28/100-31/100).

Roberts' attorney emphasized to the jury that Bell had only

15

been tried before a jury on the murder charges, while Roberts was being tried on both murder and drug charges (Doc. 15, Ex. 10, p. 18/100).  Roberts' attorney also questioned Bell closely about the fact that his attorney had filed a motion for new trial on his behalf (Doc. 15, Ex. 10, p. 29/100-31/100).  Roberts' attorney tried to make the jury understand that, pursuant to La.C.Cr.P. art. 439.1(C), if Bell's motion for new trial were granted, he would then have use immunity against re-prosecution on the second degree murder charges, so Bell would only stand convicted of attempted possession of marijuana.

The arrangement for compelling Bell to testify against Roberts, and its possible future implications for Bell, were put before the jury and Bell admitted all of it.  Therefore, the State did not withhold evidence of a deal with Bell.  Moreover, Roberts was not prejudiced by the prosecutor's opening remarks concerning Bell's second degree murder and attempted second degree murder convictions, since Bell testified as to those convictions, and there was no need for Roberts' attorney to request a cautionary instruction.  Since Roberts cannot show his attorney committed an error which prejudiced Roberts' defense, he cannot show he had ineffective assistance of counsel in this respect.

This ground for relief is meritless.

Ground 4 - Batson Challenge

Next, Roberts contends the trial judge committed clear error

16

in rejecting his <u>Batson</u> challenge to the prosecutor's strikes of non-Caucasian jurors, in violation of the Equal Protection Clause of the Fourteenth Amendment, and his counsel was ineffective for failing to raise the issue on direct appeal.  Roberts raised this claim in his application for post-conviction relief, and it was denied for failure to raise it on direct appeal (Doc. 15, Ex. 5, pp. 40/100-41/100).

Racial discrimination by the State or the defendant in jury selection offends the Equal Protection Clause.  <u>Georgia v. McCollum</u>, 505 U.S. 42, 112 S.Ct 2348 (1992), citing <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712 (1986).  Although a defendant has no right to a petit jury composed in whole or in part of persons of the defendant's own race, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria.  <u>Powers v. Ohio</u>, 499 U.S. 400, 404, 111 S.Ct. 1364, 1467 (1991).  A person's race simply is unrelated to his or her fitness as a juror.  <u>Powers</u>, 499 U.S. at 410, 111 S.Ct. at 1470.

Evaluation of a <u>Batson</u>[2] motion is a three step process. First, the complaining party must make a prima facie showing that opposing counsel has exercised peremptory strikes in a discriminatory manner.  Second, after this showing is made, the burden shifts to the striking party to articulate a race neutral

---

[2] <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712 (1986).

explanation for striking the jurors in question.  Snyder v. Louisiana, 552 U.S. 472, 476, 128 S.Ct. 1203, 1207 (2008).  In a peremptory challenge, the prosecution's explanation need not rise to the level of justifying exercise of a challenge for cause. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.  Finally, the trial court must determine whether the complaining party has carried his burden of proving purposeful discrimination.  Snyder, 552 U.S. at 476, 128 S.Ct. at 1207.  Also, Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 1865 (1991); Palmer v. Lares, 42 F.3d 975, 979 (5th Cir. 1995), citing Batson, 476 U.S. at 96-97, 106 S.Ct. at 1722-23. The critical question in determining whether a prisoner has proven purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike.  At this stage, implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 1040 (2003), and cases cited therein.

The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. Hernandez, 111 S.Ct. at 1868. On federal habeas review of a state conviction, 28 U.S.C. §2254(e) requires the federal courts to accord state court factual findings a presumption of correctness. Hernandez, 111 S.Ct. at 1869.  The trier of fact's conclusion should be accepted unless it is so

lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. <u>Hernandez</u>, 111 S.Ct. at 1871.

In the case at bar, Roberts, a black man, contends the prosecutor used his eight peremptory challenges to systematically eliminate the non-Caucasian prospective jurors who survived challenges for cause; Roberts contends that race was the sole reason the State struck these jurors.[3]  Roberts notes the trial judge found the defendant failed to make a prima facie showing of discrimination by the State and that the prosecutor offered race-neutral reasons for the exercise of his peremptory challenges. Roberts points specifically to potential jurors Wardsworth, West, Walker, Schneider, Reyes, Sampson, Page, Morgan, Cross and Allen (Doc. 18, Ex. 6, pp. 70-71/99).

At the hearing, the state pointed out that three of the State's peremptory challenges were used against non-black potential jurors, Reyes (Hispanic), Morgan (Caucasian), and Schneider (Caucasian) (Doc. 18, Ex. 6, p. 71).  The State prosecutor then showed he struck potential juror Wardsworth because she stated

---

[3] At the same time, the prosecutor noted for the record that all of Roberts' peremptory challenges were used to strike Caucasians from the jury (Doc. 18, Ex. 6, p. 77/99).  The trial judge found the defense attorney's reasons for his peremptory challenges were also race-neutral (Doc. 18, Ex. 6, p. 88/99).

repeatedly that she would have "severe problems" finding someone guilty if she knew they would be sentenced to life imprisonment (Doc. 18, Ex. 6, p. 72/99); he struck West because there was not way he could find there was a gun involved in the crime unless the State produced the gun at trial and he stated he could not rely on circumstantial evidence (Doc. 18, Ex. 6, p. 73/99); he struck Walker because she had a nephew and two sisters who had served prison sentences, she said she could not believe a witness who admitted a prior inconsistent statement, and she would have to "see it for herself" before she would believe anything if two witnesses contradicted each other (Doc. 18, Ex. 6, p. 73/99); he struck Reyes (a Hispanic) because he asked defense counsel why he was not asking a certain question on voir dire, he had a prior drug arrest in New Jersey, and he and the defense attorney were very "buddy buddy" on the subject of Reyes' long hair (Doc. 18, Ex. 6, p. 74/99); he struck Sampson because her brother was currently imprisoned for armed robbery, a jury trial case the prosecutor had assisted on, and her mother and aunt were the victims of a drive-by shooting (Doc. 18, Ex. 6, p. 74/99); he struck Page because she knew Roberts when they were growing up and they maintained eye contact and smiled at each other during voir dire (Doc. 18, Ex. 6, p. 75/99); he struck Cross because her brother is currently imprisoned on a drug conviction (Doc. 18, Ex. 6, pp. 75/99-76/99); and he struck Allen because he was not candid about his prior arrests (he had

three but only admitted one) and he had spent two years in prison on a drug offense (Doc. 18, Ex. 6, p. 76/99).  The court accepted these reasons as race-neutral and denied Roberts' <u>Batson</u> challenge.

Although Roberts contends the State prosecutor discriminated against black potential jurors by striking them, Roberts has not shown there was a pattern of strikes by a prosecutor against black jury members, nor has he produced statements or actions of the prosecutor which show his exercise of peremptory strikes was motivated by racial considerations or that there was any other disparate impact upon black jurors.  The prosecutor's reasons for exercising peremptory strikes were race-neutral and were not implausible or pretextual, and the state court's factual findings in this regard are supported by the evidence.  Compare, <u>Fields v. Thaler</u>, 588 F.3d 270 (5th Cir. 2009), cert. den., 131 S.Ct. 235 (U.S. 2010)(potential juror struck due to currently incarcerated relative); <u>Haynes v. Thaler</u>, 2011 WL 3652598 (5th Cir. 2011)(potential juror struck due to difficulty accepting potential sentence); <u>Cook v. Lamarque</u>, 593 F.3d 810, 821 (9th Cir. 2010)(potential juror struck due to inability to accept or assess circumstantial evidence); <u>U.S. v. Williams</u>, 822 F.2d 512, 515 (5th Cir. 1987) and <u>Williams v. Rader</u>, 1992 WL 54728 (E.D.La. 1992)(potential juror struck due to prior arrest); <u>Hayes v. Quarterman</u>, 2007 wl 4440950 (N.D.Tex. 2007), rev'd on other grounds, 361 Fed.Appx. 563 (5th Cir. 2010)(juror struck for lying

about arrest record).

Therefore, Roberts has not shown the State prosecutor purposefully exercised his peremptory challenges to remove non-Caucasians from the jury, or that his counsel erred in failing to raise this claim on appeal.  This ground for relief is meritless.

Ground No. 6 - Double Jeopardy

Next, Roberts contends his convictions for second-degree murder, attempted second-degree murder, possession of marijuana with intent to distribute, and felon in possession of a firearm violate the double jeopardy clause under the same evidence test. The state court denied this claim, finding Roberts should have raised it on direct appeal (Doc. 15, Ex. 5, p. 40/100).

In Louisiana, second degree murder is defined in pertinent part in La.R.S. 14:30.1:

A. Second degree murder is the killing of a human being:

         \*          \*         \*

(2) When the offender is engaged in the perpetration or attempted perpetration of... armed robbery..., even though he has no intent to kill or to inflict great bodily harm.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  The Clause protects a criminal defendant from multiple prosecutions as well from multiple punishments for the same criminal offense. U.S. v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 2855-56 (1993).  Where conviction of a greater

crime cannot be had without conviction of the lesser crime, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.   Thus, the Double Jeopardy Clause prohibits prosecution for both felony murder and the underlying felony. Harris v. Oklahoma, 433 U.S. 682, 682-683, 97 S.Ct. 2912, 2913 (1977); Neville v. Butler, 867 F.2d 886, 889 (5th Cir. 1989).

Roberts was convicted of second degree murder of victim Cook and attempted second degree murder of victim Reyna.   The second degree and attempted second degree murder charges were based on "felony-murder," or murder during the commission of a felony, in this case armed robbery (Doc. 15, Ex. 14, p. 13/35).   Although Roberts was convicted on the second degree murder and attempted second degree murder charges, he was not convicted also of armed robbery, the underlying felony for both of the second degree murder charges.[4]   Had Roberts been convicted of the second degree murder of Cook (based on armed robbery) as well as armed robbery of Cook, he would have been subjected to double jeopardy because he would have been twice convicted for the armed robbery of Cook.   Likewise, had Roberts been convicted of the attempted second degree murder of Reyna (based on armed robbery) as well as the armed robbery of Reyna, he would have been subjected to double jeopardy because he

---

[4] Roberts erroneously asserts that possession of marijuana with intent to distribute was the underlying felony for his charge for the attempted second degree murder of Reyna.   However, armed robbery was the underlying felony for that charge (See Doc. 15, Ex. 14, p. 19/35).

would have been twice convicted for the armed robbery of Reyna. However, Roberts was not convicted of armed robbery.

Instead, Roberts was also convicted of two other felonies, possession of marijuana with intent to distribute and felon in possession of a firearm. Since neither of those offenses were the underlying offenses for the second degree murder and attempted second degree murder charges, Roberts was not subjected to double jeopardy.

This ground for relief is meritless.

Ground No. 7 - Jury Instruction

Roberts contends his Sixth Amendment right to a fair trial was prejudiced when the trial judge failed to give the jury any instructions to not discuss the case with anyone or among themselves, and not to read or watch media accounts of the trial when it retired during recess and breaks during trial, and defense counsel was ineffective for failing to object. Roberts contends the jurors knew about the case before trial, according to their testimony during voir dire, and heard it being discussed in and outside of the courthouse both before and during the trial.

It is not required that the jurors be totally ignorant of the facts and issues involved in a case. The mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is insufficient to rebut the presumption that a prospective juror is impartial if the juror can lay aside his or

her impression and render a verdict based on the evidence presented
in court.  De La Rosa v. State of Texas, 743 F.2d 299, 1379 (5th
Cir. 1984), cert. den., 470 U.S. 1065, 105 S.Ct. 1781 (1985),
quoting Irvin v. Dowd, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642
(1961); Willie v. Maggio, 737 F.2d 1372, 1379 (5th Cir.), cert.
den., 469 U.S. 1002, 105 S.Ct. 415 (1984).

After the jury was selected and empaneled, and before any
evidence was presented, the trial judge ordered the jury not to
discuss the case with anybody, not to discuss the case with each
other, not to speak to the attorneys, and not to watch any
television stories about the case or read about it on the internet
(Doc. 18, Ex. 6, p. 99/99).  The judge's order clearly encompassed
the entire duration of the trial.

Since Roberts' argument that the trial judge failed to give
the jury this instruction is factually erroneous, Roberts clearly
did not receive ineffective assistance of counsel as alleged.
Although  Roberts  contends  that  the  jurors'  exposure  to
"conversations" about the case influenced them against him, he
offers no proof of the conversations, which jurors overheard those
conversations, or that the jurors were influenced against him by
anything other than the evidence presented at trial.[5]   A habeas

_____

[5] Although Roberts contends potential juror Hudson can
testify that she was influenced by pretrial publicity, Hudson was
peremptorily challenged and struck from Roberts' jury.  Roberts
argues that the seated jurors were influenced just at Hudson was,
but offers no proof to support this assertion.

petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059 (1988). Moreover, juries are presumed to follow the instructions of the court. U.S. v. Akpan, 407 F.3d 360, 368 (5th Cir. 2005), and cases cited therein. There is no evidence in this case that Roberts' jurors did not follow the trial judge's instructions regarding discussing the case and watching or reading news about it.

This ground for relief is meritless.

Ground No. 8 - Prosecutorial Misconduct

Next, Roberts contends prosecutorial misconduct occurred when the prosecutor improperly vouched for the credibility of state witness Jose Reyna during closing argument. According to Roberts, the State prosecutor improperly stated that the victim's (Reyna's) injuries were life-threatening and that he risked his life by coming forward to testify. Roberts admits he cannot point to any place in the trial record where these comments occurred because he does not have a complete copy of his trial transcript. Roberts explains the jury was "merely to infer" that Roberts had threatened Reyna's life for testifying, which the State used to verify the Reyna's credibility.

26

The touchstone of the due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.  Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.  Prosecutorial misbehavior, alone, does not constitute a wrong of constitutional dimension and does not require a new trial. Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982).  Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, a new trial is required only when the tainted evidence was material to the case.  The materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.  Smith, 455 U.S. at 220 n.10, 102 S.Ct. at 947 n.10.

The comments by the prosecutor to which Roberts refers were not made during either the State's opening statement (Doc. 15, Ex. 7, p. 46/100) or closing argument (Doc. 15, Ex. 13 p. 24/100, Ex. 14 p. 2/35).  Moreover, at trial Reyna testified he had been shot three times and underwent a hip replacement as a result, Reyna's medical records were introduced into evidence (Doc. 15, Ex. 8, p. 71/100), and Reyna positively identified Roberts as the person who killed Cook and shot him (Doc. 15, Ex. 8, pp. 69/100, 99/100; Doc. 15, Ex. 9, pp. 50/100-51/100).  However, there were no statements

by the prosecutor that vouched for Reyna's credibility, described Reyna's injuries as "life-threatening," or indicated that Reyna was risking his life by testifying.  Prosecutorial misconduct is not implied by any inference the jury made from the evidence as to Reyna's credibility.  Since Roberts has not shown any misconduct by the prosecutor, he also has not shown that he had ineffective assistance of counsel.

This ground for relief is meritless.

Ground 9 - Trial Judge's Comments

Finally, Roberts argues the trial judge violated Roberts' right to a fair trial and due process by making erroneous and misleading comments on the responsive verdicts.  However, Roberts does not state what the improper comments were and the undersigned does not find any.  The trial judge simply recited the standard jury instructions for the responsive verdicts (Doc. 15, Ex. 14, pp. 18/35-30/35).

Since Roberts has not carried his burden of proving the trial judge made improper comments, this ground for relief is also meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Roberts' Section 2254 petition for habeas relief be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and

28

Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of**

appealability should issue. *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 26th day of September, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE